**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JESSICA GUERRIERO, on behalf of herself and all others similarly situated,** | ) ) ) | **CASE NO. 4:21-cv-01917** |
| **Plaintiff,** | ) ) | **JUDGE BENITA Y. PEARSON** |
| **v.** | ) ) ) | |
| **PENN NATIONAL GAMING, INC., et al.** | ) ) | **DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** |
| **Defendants.** | ) ) | |

# TABLE OF CONTENTS

I.     BRIEF STATEMENT OF THE ISSUES PRESENTED ...............................1

II.    SUMMARY OF THE ARGUMENT ..................................................1

III.   RELEVANT FACTUAL BACKGROUND.................................................2

IV.   LEGAL STANDARD .......................................................................4

V.    ARGUMENT .................................................................................5

    A.    Plaintiff Fails to Plausibly State a Minimum Wage Violation..........5

    B.    Plaintiff's Ohio Prompt Pay Act Claim Must Be Dismissed Because the Wages Are in Dispute. ....................................................................6

    C.    The Gaming License Deductions Are Permissible Even if They Brought Plaintiff's or Others' Net Compensation Below Minimum Wage Because the Licenses Are for the Benefit of the Employee.....7

        1.    Defendants' Upfront And Agreed-Upon Payment Of The Gaming License Cost Is A Loan Or Advance Against Future Wages, Making The Deduction Allowable Under The FLSA.8

        2.    The License Is For The Benefit Of The Employee Because It Is Transferable – Allowing The Employee To Work At Any Other Employer With The Same Licensed Job. ..................10

        3.    Under Ohio Law, An Employee Could Not Work And Make A Living At Casinos And Racinos Without A Gaming License – Underscoring That The License Is For The Benefit Of The Employee..............................................................12

        4.    The Stated Purpose of the License Is to Ensure the Integrity of Gaming and to Protect the Public – Further Showing the License Is Not for the Employer's Benefit. ...........................15

VI.   CONCLUSION ...........................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Armengau v. Cline,*
   7 F. App'x 336 (6th Cir. 2001) .......................................................................... 9, 10

*Arriaga v. Fla. Pac. Farms, L.L.C.,*
   305 F.3d 1228 (11th Cir. 2002) ............................................................................ 13

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).......................................................................................... 9, 10

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).............................................................................................. 9

*Brennan v. Veterans Cleaning Serv., Inc.,*
   482 F.2d 1362 (5th Cir. 1973) ....................................................................... 13, 14

*Campbell-Ewald Co. v. Gomez,*
   577 U.S. 153 (2016)............................................................................................ 12

*Dejesus v. HF Mgmt. Servs., LLC,*
   726 F.3d 85 (2d Cir. 2013)................................................................................. 11

*Demezier v. Ravede Ins. Agency, Inc.,*
   No. 09-60777-CIV-ALTONAGA/Brown., 2010 WL 680837
   (S.D. Fla. Feb. 18, 2010)......................................................................... 13, 14, 15

*Directv, Inc. v. Treesh,*
   487 F.3d 471 (6th Cir. 2007) .......................................................................... 9, 13

*Golf Village North, LLC v. City of Powell,*
   14 F.4th 611 (6th Cir. 2021) ................................................................................ 9

*Gregory v. Shelby Cnty.,*
   220 F.3d 433 (6th Cir. 2000) ............................................................................... 9

*Haines & Co., Inc. v. Stewart,*
   No. 2000CA00138, 2001 WL 166465 (Ohio Ct. App. 2001)............................. 12

*Hancock v. Miller,*
   852 F. App'x 914 (6th Cir. 2021) ...................................................................... 10

*Harbourt v. PPE Casino Resorts Maryland, LLC,*
   820 F.3d 655 (4th Cir. 2016) ............................................................................. 16

*Haszard v. American Medical Response Northwest, Inc.,*
   237 F. Supp. 2d 1151 (D. Or. 2001) ............................................................. 19, 20

*Heeter v. J. Peterman Enters., LLC,*
   No. 2:15-cv-3062, 2017 WL 4236575 (S.D. Ohio Sept. 21, 2017)..................... 12

*Lower v. Elec. Data Sys. Corp.,*
   494 F. Supp. 2d 770 (S.D. Ohio 2007) .............................................................. 12

*Montoya v. CRST Expedited, Inc.,*
   404 F. Supp. 3d 364 (D. Mass. 2019),
   *appeal filed*, No. 21-1125 (1st Cir. Feb. 17, 2021)....................................... 13, 16

*O'Brien v. Ed Donnelly Enters., Inc.,*
   575 F.3d 567 (6th Cir. 2009) ............................................................................. 12

*Rivera v. Brickman Group, Ltd.,*
   Civ. No. 05-1518, 2008 WL 81570 (E.D. Pa. Jan. 7, 2008) ............................... 17

*Sherwood v. Cook Out, Inc.,*

No. 5:16-cv-92-REW, 2019 WL 3976510 (E.D. Ky. Aug. 22, 2019) ...................................... 11
*Stein v. HHGREGG, Inc.*,
    873 F.3d 523 (6th Cir. 2017) ............................................................................................ 10
*Sutka v. Yazaki N. Am. Inc.*,
    256 F. Supp. 3d 677 (E.D. Mich. 2017) ............................................................................ 12
*Terry v. Pro-Mark Contracting, LLC*,
    No. 1:14-CV-2542, 2016 WL 3421399 (N.D. Ohio June 22, 2016) .................................. 12
*Thomas v. Speedway SuperAmerica, LLC*,
    506 F.3d 496 (6th Cir. 2007) ............................................................................................ 12
*Ward v. Costco Wholesale Corp.*,
    No. 2:08-cv-2013-FMC-FFM, 2009 WL 10670191 (C.D. Cal. May 6, 2009) .................. 14, 15
*Wyser-Pratte Mgm't Co. v. Telxon Corp.*,
    413 F.3d 553 (6th Cir. 2005) ............................................................................................ 10
*Yeary v. Goodwill Indus.-Knoxville, Inc.*,
    107 F.3d 443 (6th Cir. 1997) ............................................................................................ 10
*York v. Velox Express, Inc.*,
    No. 3:18-cv-481-CRS, 2018 WL 4901213 (W.D. Ky. Oct. 9, 2018) ................................. 10

**Statutes**

29 U.S.C. § 206(a) ........................................................................................................................ 10
*In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Labor Standards Act and Wage and Hour Litig.*,
    905 F.3d 387 (6th Cir. 2018) ............................................................................................ 10
O.R.C. § 3769.03 ......................................................................................................................... 20
O.R.C. § 3772.03(A) .................................................................................................................... 20
O.R.C. § 4111.02 ......................................................................................................................... 11
O.R.C. § 4113.15(B) .................................................................................................................... 12
O.R.C §§ 4111.02–03 ................................................................................................................... 12

**Other Authorities**

*Fact Sheet #16: Deductions from Wages for Uniforms and Other Facilities Under the Fair Labor
    Standards Act (FLSA)*, U.S. DEP'T OF LABOR: WAGE AND HOUR DIVISION (July 2009).... 13, 18
*Fact Sheet #4: Security Guard/Maintenance Service Industry Under the Fair Labor Standards
    Act (FLSA)*, U.S. DEP'T OF LABOR: WAGE AND HOUR DIVISION (July 2008)........................... 19
U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter,
    2004 WL 3177896 (Oct. 8, 2004) ..................................................................................... 14, 19

**Regulations**

29 C.F.R. § 531.32 (2018) ........................................................................................................... 18
29 C.F.R. § 531.40 (2019) ........................................................................................................... 14
29 C.F.R. 531.30 (2019) .............................................................................................................. 13

**Constitutional Provisions**

Ohio Const. Art. II, § 34a ............................................................................................................ 12

## I.  BRIEF STATEMENT OF THE ISSUES PRESENTED

(1)  Has Plaintiff sufficiently alleged a violation of the FLSA and Ohio State wage and hour law on the basis of a deduction for the cost of a State-required gaming license pursuant to Fed. R. Civ. P. 12(b)(6)?

(2)  Should Plaintiff's claim under the Ohio Prompt Pay Act ("OPPA") be dismissed where, as here, the wages at issue are in dispute?

(3)  Has Plaintiff failed to state a claim for a minimum wage violation pursuant to Fed. R. Civ. P. 12(b)(6) because the portable, State-issued gaming license is for the benefit of the employee (making the deduction of its costs permissible)?

## II.  SUMMARY OF THE ARGUMENT

Plaintiff's Complaint[1] is a barebones set of conclusory allegations which fail to sufficiently allege any minimum wage violation under the Fair Labor Standards Act ("FLSA") or Ohio wage and hour law.  Nowhere in the Complaint does Plaintiff sufficiently plead the basic elements of her wage claim – that in any workweek, Plaintiff actually received less than the statutorily-mandated minimum wage as a result of a deduction of the cost of a "gaming license"[2] from her paycheck. Further, Plaintiff's claim under the Ohio Prompt Pay Act ("OPPA") must be dismissed because the OPPA does not apply to disputed wages like the ones at issue here.  In addition, Defendants' payment of the gaming license costs functions as a loan which is not for the employer's benefit – the license is designed to maintain the integrity of gaming and protect the

---

[1] For purposes of this Motion, Defendants accept as true all facts asserted by Plaintiff in her Complaint, as they are required to do.  Defendants, however, expressly reserve their right to contest such facts for purposes other than the present Motion.

[2] Throughout her Complaint, Plaintiff refers to a "gaming license," but fails to identify what she means by that term, not identifying *who or what entity* issued the license.  As explained further herein, three state agencies may issue a license that is required for employment at a casino or "racino" property: the Ohio Casino Control Commission, the Ohio Racing Commission, and the Ohio Lottery Commission.  To avoid confusion for the Court and for consistency's sake, Defendants will use the term gaming license to refer to any license issued by any of these three entities to employees at the four properties in Plaintiff's Complaint.

public.  Finally, Plaintiff's claims fail because the alleged deduction is permissible under applicable law (regardless of whether the deduction reduced wages below minimum wage) because it is for the *employee's* benefit, not the employer's.  For all these reasons, as set forth more fully below, Plaintiff's claims must be dismissed.

### III.    RELEVANT FACTUAL BACKGROUND

A patchwork of regulations related to gaming facilities governs casinos and racinos in Ohio.[3]  Two of the entities in this litigation (Hollywood Casino Columbus and Hollywood Casino Toledo) are casinos, while the other two (Hollywood Gaming at Dayton Raceway and Hollywood Casino at Mahoning Valley Race Course) are racinos.  They are subject to the regulatory control of three separate entities: the Ohio Casino Control Commission (regulating casinos), and the Ohio Lottery Commission and Ohio Racing Commission (jointly regulating racinos).  Each agency sets forth requirements for establishments within its jurisdiction, including employee licensing.

For employees in their purview, the commissions have developed licensure requirements, including which employees must be licensed, how individuals apply for the licenses, the costs of the licenses, and the renewal procedure for the licenses.[4]  Under these rules, a gaming license is transferable between casinos, as are licenses from racinos, so long as the license is applicable to the position in which the individual is or will be employed.  Further, the issuance or renewal of a gaming license is **not** dependent on an offer of or current employment with a casino; any individual

---

[3] A racino is a combined racetrack and casino.  In Ohio, including the racinos at issue here, the "casino" portion of the racino includes only slot machines and not table games.

[4] *See* Ohio Casino Control Comm'n, *Casino Gaming Employee Application*, https://casinocontrol.ohio.gov/CasinoLicensing/CasinoGamingEmployee.aspx ("License Application"); Ohio Lottery Commission, Employee License Application, https://ohiolottery.com/assets/vlt/Racetrack-Employees/VLT_Employee_application_JUNE_2020.pdf; Ohio Racing Commission, *2021 Licensing*, http://www.racingohio.net/Licensing.html.

can apply for, pay for, and obtain a gaming license, whether they work at a casino or not.[5]  Finally, employers are specifically authorized to deduct the costs of the gaming license from employees' paychecks, and they "may choose to seek reimbursement from [the applicant] for the amount of the fee paid **on [the applicant's] behalf**."  License Application, at 3 (emphasis added)[6]; *see also* Renewal FAQs.

What this means, in practice, is that an individual who wishes to be employed by a casino may pay for and obtain a gaming license on the individual's own, then apply to the casino with license in hand, and be eligible for employment immediately.  Likewise, an individual may elect to seek employment with a casino before getting a license with the understanding that the individual will be required to be licensed before being eligible to work in a gaming employee position *and* the casino may seek to recover from the employee the costs of the licensure, which may be paid for upfront by the casino on the employee's behalf.  And once the employee is licensed, the employee may move to any other employer, with that same license.

Here, Plaintiff agreed that her employer would initially front the cost of her gaming license, and she would repay her employer.  *See* Declaration of Paige Bolton, attached hereto as Exhibit 1, at Ex. A (Plaintiff's written authorization for paycheck deduction) ("Bolton Dec.").  The authorization specifically states it is made with the employee's "full and freely given consent" and provides that:

> [Employees] are individually responsible for paying all fees and renewals related to maintaining a current Ohio State Gaming License.  The initial cost of the license **will be paid up front** by [the employer] in order for the individual to attain the license.  The

---

[5] *See* License Application at 3; *see also* Ohio Casino Control Commission, FAQS About Renewing Your Gaming Employee License ("Renewal FAQs"), https://casinocontrol.ohio.gov/Portals/0/Licensing/Licensing%20FAQs%20-%20Sept%202021.pdf?ver=PzQ4KlT3W1NM8dPqSe1hwA%3d%3d (September 2021).

[6] The form and issuance of the license application is authorized by statute and expressly left to the discretion of the Casino Control Commission. O.R.C. § 3772.131(D).

expense will then…be recovered from each [employee] via payroll-deduction at a rate of $15 per paycheck until the remaining balance is paid.

*Id.* (emphasis added).[7]

## IV.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible on its face**." *Golf Village North, LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (emphasis added).  "Facial plausibility" requires the claim to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft*, 556 U.S. at 678).  The complaint must contain "more than labels or conclusions" and cannot be a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Though the court must accept the factual allegations of the complaint as true, it "need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

While the Court's focus is on the complaint's allegations, it may also take into account other documents and information that are "integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Hancock v. Miller*, 852 F. App'x 914, 919–20 (6th Cir. 2021) (quoting *Wyser-Pratte Mgm't Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005)).  The Sixth Circuit has "taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)."  *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001).  Such

---

[7] The authorization for the deduction which serves as the sole basis for Plaintiff's entire Complaint is the exact sort of outside document which fills in the details and contours of the Complaint and which can be considered in ruling on a Motion to Dismiss.  *See, e.g.*, *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001).

materials which "fill in the contours and details of a complaint" add "nothing new" and do not convert the motion into one for summary judgment. *Id.* (quoting *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)).

### V.     ARGUMENT

#### A.     Plaintiff Fails to Plausibly State a Minimum Wage Violation.

The FLSA mandates that covered employers pay employees a statutory minimum wage. *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 530 (6th Cir. 2017) (citing 29 U.S.C. § 206(a)). The "minimum wage requirement is generally met when an employee's total compensation for the week divided by the total number of hours worked equals or exceeds the required hourly minimum wage." *Id.* at 537. Accordingly, to state a minimum wage violation under federal law, a plaintiff must "identify a particular workweek in which, taking the average rate, [she] received less than the minimum wage per hour." *In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Labor Standards Act and Wage and Hour Litig.*, 905 F.3d 387, 406 (6th Cir. 2018).

Plaintiff's Complaint falls woefully short of meeting even this minimal standard. Like the complaint dismissed in *York v. Velox Express, Inc.*, Plaintiff fails to identify even *where* or *when* she worked, much less *how much* she worked or was paid. No. 3:18-cv-481-CRS, 2018 WL 4901213, at *3 (W.D. Ky. Oct. 9, 2018) (dismissing complaint where Plaintiffs offered nothing more than "unadorned, the defendant-unlawfully-harmed-me accusations" lacking "further factual enhancement" by alleging they were not reimbursed for vehicle-related expenses which led to them receiving less than minimum wage, but the complaint lacked facts as to the expenses, the pay structures, the employment dates, or average workweek hours) (citing *Iqbal*, 556 U.S. at 678).

The Complaint merely alleges she and others were paid "at or just above the Ohio minimum wage," but it provides no actual hourly rate amounts or hours worked. Ohio's minimum wage has ranged from $8.30 in 2018 to $8.80 in 2021, O.R.C. § 4111.02, and there is no way of discerning

what is "just above" the Ohio minimum wage.  And while Plaintiff alleges that in weeks where a deduction of fifteen dollars was taken, her and others' wages fell below *both* the federal and Ohio minimum wage requirements, there are no facts plausibly suggesting that is the case (particularly given an employee paid the Ohio minimum wage of $8.80/hour could sustain a $15 deduction without falling below the federal minimum wage of $7.25/hour).  Indeed, with no information regarding hours worked or wages paid, it is impossible to infer any potential minimum wage violation.  These allegations are "in the vein of 'those borderline phrases that while not stating an ultimate legal conclusion, [are] nevertheless so threadbare or speculative that [they] fail[] to cross the line between the conclusory and the factual.'" *Sherwood v. Cook Out, Inc.*, No. 5:16-cv-92-REW, 2019 WL 3976510, at *4 (E.D. Ky. Aug. 22, 2019) (quoting *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (alterations in original)).

While Plaintiff need not plead her pay with "mathematical precision," her Complaint lacks the "sufficiently developed factual allegations" needed to sustain her minimum wage claims under the FLSA and Ohio law. *Sherwood*, 2019 WL 3976510, at *4 (quoting *Dejesus*, 726 F.3d at 90). Accordingly, her Complaint must be dismissed.

**B.    Plaintiff's Ohio Prompt Pay Act Claim Must Be Dismissed Because the Wages Are in Dispute.**

The Ohio Prompt Pay Act ("OPPA") applies only to undisputed, but unpaid, wages.  Here, undoubtedly, the wages are disputed; the cornerstone of the Complaint is a dispute over the legality of a deduction, impacting wages due to Plaintiff.  This is no different than, for example, litigation arising from the question of whether certain commissions are wages; in such a case, OPPA damages are precluded because of the underlying legal dispute.  *See, e.g.*, *Haines & Co., Inc. v. Stewart*, No. 2000CA00138, 2001 WL 166465, at *3 (Ohio Ct. App. 2001).

The OPPA only applies to undisputed wages because liability under the OPPA can only arise where the claimed unpaid wages are "not in contest or disputed."  O.R.C. § 4113.15(B).

Whether the dispute accounting for nonpayment of wage is factual or legal is irrelevant as either precludes the award of damages pursuant to the OPPA. *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 577–78 (6th Cir. 2009), *overruled on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016); *Lower v. Elec. Data Sys. Corp.*, 494 F. Supp. 2d 770, 775 (S.D. Ohio 2007) (the OPPA "expressly applies only to wages that are not in dispute"); *Terry v. Pro-Mark Contracting, LLC*, No. 1:14-CV-2542, 2016 WL 3421399, at *6 (N.D. Ohio June 22, 2016) (finding the OPPA "does not apply to disputed wages"); *Sutka v. Yazaki N. Am. Inc.*, 256 F. Supp. 3d 677, 683 (E.D. Mich. 2017) (dismissing OPPA claims where "underlying unpaid wage claim is disputed by the employer"). Because the wages at issue in this litigation are disputed, the OPPA does not apply, and Plaintiff's OPPA claim (Count III) must be dismissed.

### C. The Gaming License Deductions Are Permissible Even if They Brought Plaintiff's or Others' Net Compensation Below Minimum Wage Because the Licenses Are for the Benefit of the Employee.

The FLSA and Ohio law generally require the payment of minimum wage for all hours worked.[8]  However, an employer can make deductions from an employee's wages that lawfully reduce the wages below the minimum level if the deductions are for the benefit of the *employee* or to repay a loan which does not benefit the employer. *See, e.g.*, 29 C.F.R. 531.30 (2019) (deduction for reasonable cost of lodging facilities provided to an employee may reduce the wages below minimum because they are for the employee's benefit); *Fact Sheet #16: Deductions from Wages for Uniforms and Other Facilities Under the Fair Labor Standards Act (FLSA)*, U.S. DEP'T OF LABOR: WAGE AND HOUR DIVISION (July 2009), https://www.dol.gov/whd/regs/compliance/whdfs16.pdf (hereinafter, *Fact Sheet #16*); *see also Montoya v. CRST Expedited,*

---

[8] This analysis also applies to Plaintiff's claims under the Ohio Minimum Wage Fair Standards Act. "Ohio law incorporates the FLSA's definitions, standards, and principles for its minimum wage and overtime compensation provisions" and such "claims may be analyzed together." *Heeter v. J. Peterman Enters., LLC*, No. 2:15-cv-3062, 2017 WL 4236575, at *3 (S.D. Ohio Sept. 21, 2017) (citing Ohio Const. Art. II, § 34a; O.R.C. §§ 4111.02–03; *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007)).

*Inc.*, 404 F. Supp. 3d 364, 390 (D. Mass. 2019), *appeal filed*, No. 21-1125 (1st Cir. Feb. 17, 2021) (noting the determination of whether costs benefit the employer or employee can be "nuanced" and "fact-specific") (citing *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1243 (11th Cir. 2002)); *Demezier v. Ravede Ins. Agency, Inc.*, No. 09-60777-CIV-ALTONAGA/Brown., 2010 WL 680837, at *2 (S.D. Fla. Feb. 18, 2010) (citing *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1369 (5th Cir. 1973)).

While Plaintiff's Complaint baldly alleges a gaming license deduction is for the employer's benefit (*see* Complaint at ¶¶ 28–29), her mere statement and legal conclusion do not make it so.[9] Moreover, contrary to Plaintiff's unsupported assertion of liability, and as set forth below, a gaming license is actually for the benefit of the employee.  As a result, the deduction is permissible under the FLSA and Ohio law for at least three independent reasons – and Plaintiff, therefore, has failed to state a claim pursuant to Rule 12(b)(6).

1.  **Defendants' Upfront And Agreed-Upon Payment Of The Gaming License Cost Is A Loan Or Advance Against Future Wages, Making The Deduction Allowable Under The FLSA.**

The FLSA allows an employer to loan or advance funds to an employee and then deduct payments for such amounts from the employee's paycheck, regardless of its effect on minimum wage, because the loan or advance does not benefit the employer.  *See, e.g.*, 29 C.F.R. § 531.40 (2019); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2004 WL 3177896, at *1 (Oct. 8, 2004).  In other words, a payment by an employer to an employee as a loan is allowable as an advancement secured against an employee's future wages.  In *Demezier Ravede Insurance Agency,*

---

[9] This is the precise type of legal conclusion to which no presumption of truth is entitled.  *See Treesh*, 487 F.3d at 476.  Plaintiff's Complaint cites, without any analysis, two Western District of Missouri cases. Complaint at ¶ 30 (citing *Lockett v. Pinnacle Entertainment, Inc.*, 408 F. Supp. 3d 1043 (W.D. Mo. 2019); *Lilley v. IOC-Kansas City*, No. 4:19-cv-00553-SRB, 2019 U.S. Dist. LEXIS 193699 (W.D. Mo. Nov. 7, 2019)).  Not only are those cases not controlling, they are inapposite for a host of reasons, including the fact they arose under different states' regulatory schemes regarding licensure and, therefore, offer no analysis regarding the Ohio regulations applicable here.

*Inc.*, for example, the employer paid $495 for the plaintiff-insurance agent's license fee, required pursuant to Florida law for the type of work the plaintiff performed. 2010 WL 680837, at *1–2. The insurance agency subsequently deducted the cost of the license from the agent's wages (taking her below minimum wage), and the agent claimed a minimum wage violation.  The court flatly rejected the claim, noting the parties had *agreed* the plaintiff would repay the cost for the license fee, and that an agreement to pay "advances, i.e., loans" is "permissible and not inherently suspect."  *Id.* at *2; *see also Brennan*, 482 F.2d at 1369 (noting the FLSA does not "seek to discourage loans to employees"); *Ward v. Costco Wholesale Corp.*, No. 2:08-cv-2013-FMC-FFM, 2009 WL 10670191, at *4 (C.D. Cal. May 6, 2009) (noting courts have "generally held that wage advances [and] certain loans on wages…may be deducted from an employee's paycheck").

Here, the employer's payment of the Plaintiff's gaming license fee is a loan or advance to the employee, for her benefit.  Indeed, the loan is memorialized in a signed agreement that allows the employer to recoup the costs of the gaming license fees.  *See* Bolton Dec. at Ex. A.  And, in fact, at least for the Casino Control Commission gaming licenses, the application *expressly allows* for this recoupment. *See* License Application at 3.  The authorization signed by Plaintiff describes the exact nature of the loan:

> [Employees] are individually responsible for paying all fees and renewals related to maintaining a current Ohio State Gaming License. The initial cost of the license **will be paid up front** by [the employer] in order for the individual to attain the license.  The expense will then…be recovered from each [employee] via payroll-deduction at a rate of $15 per paycheck until the remaining balance is paid.

Bolton Dec. at Ex. A (emphasis added).  The authorization makes clear the employee is "granting [the] authorization with [the employee's] full and freely given consent."  *Id.*  Plaintiff freely consented to her employer's upfront payment of her gaming license costs – and to the repayment of that loan via payroll deductions.

Just as it was permissible in *Demezier Ravede Insurance Agency*, Defendants' deduction of the license fee is permitted under the FLSA as a repayment of a loan which does not benefit the employer.  Accordingly, Plaintiff has failed to a state a claim upon which relief can be granted.

2.      **The License Is For The Benefit Of The Employee Because It Is Transferable – Allowing The Employee To Work At Any Other Employer With The Same Licensed Job.**

An Ohio gaming license is fully transferable between employers.  Once an employee obtains a gaming license (whether on his or her own or through his or employer), that gaming license can be used to work at *any* employer, in *any* position requiring the same type of license. In practice this means that an employee may obtain his or her gaming license, begin employment at a casino, and then choose to leave to work for a competitor casino – utilizing that same license. The opposite is true as well: a rival casino may hire an employee away from a competitor and the employee, with a gaming license already in hand, may start work immediately for the competing casino – again, with the same license.  This transferability, standing alone, demonstrates the gaming license is for the benefit of the employee, *not* the employer.  Therefore, the deductions for the gaming license are allowed pursuant to the FLSA – and Plaintiff has failed to state a claim for relief under Rule 12(b)(6).

Whether something paid for on behalf of an employee by an employer, or provided to an employee by an employer, is for the employee's benefit hinges on its transferability to another employer.  *See, e.g.*, *Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 660 (4th Cir. 2016) (transferability is a "very important" consideration in this analysis).  In *Harbourt*, for example, the court considered whether training time for casino trainees was compensable because it was unique to and for the specific employer's benefit.  The court explained that compensability was sufficiently pled as benefitting the employer because the "training was unique to the Casino's specifications and was *not* transferable to work in other casinos." *Id.* (emphasis added).  Here, the

10

opposite is true.  The license is <u>not</u> unique to the gaming entity because it is transferable between employers (and Plaintiff has not even alleged otherwise).

The gaming license is akin to a commercial driver's license ("CDL"), as both can be used with any employer.  Someone wanting to drive for a trucking company, for example, could study, take the required tests, and receive a CDL before applying for any jobs, making the individual highly marketable to any number of trucking companies for whom the now-licensed truck driver wants to work.  After hiring the license holder, an employer could require the employee maintain the CDL, in compliance with various Department of Transportation regulations.  Undoubtedly, the portable CDL – like the portable gaming license – primarily benefits the employee, as it opens the door to employment that is not specific to any employer.  Such is the exact case in *Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364, 386–87 (D. Mass. 2019), *appeal filed*, No. 21-1125 (1st Cir. Feb. 17, 2021) (finding that training provided for CDLs during a training program was for the benefit of student drivers, as the CDL was "not [defendant]-specific and [was] transferable to other commercial trucking jobs").  In much the same way, an attorney's bar license is a gateway to employment – and clearly benefits the lawyer.  A law firm cannot operate without licensed attorneys – but it would be illogical to say the attorney's license is for the benefit of the firm when the state-required license gives the attorney the ability to practice law *wherever* the license so allows.  To accept Plaintiff's argument would be to require all employers pay for *any* industry-specific license – even when that license could be used for *any* employer within the industry.

Transferability to other employers being clear indicia that something benefits the employee is further confirmed when considering the inverse.  An H-2B visa is undoubtedly for the benefit of the employer, in part because it is *not* transferable.  An employer who elects to participate in the visa program primarily benefits from the visas because they authorize work only for a *single* employer.  In *Rivera v. Brickman Group, Ltd.*, the court correctly concluded, "unlike ordinary

living expenses, these visas had **no value** to the workers other than their authorization to work for [the defendant]."  Civ. No. 05-1518, 2008 WL 81570, at *12 (E.D. Pa. Jan. 7, 2008) (emphasis added).  The court further noted, though, that if a job required the purchase of a passport, the associated costs could be deductible.  *Id*.  The court reasoned that because a passport has more general usage beyond a single employer (*i.e.*, transferability between employers), it was **not** primarily for the benefit of the employer but benefited the employee. *Id.*

In this case, the gaming licenses, like a CDL, are not limited to any particular casino, racino, or employer.  On the contrary, they can be used at any gaming establishment in Ohio, so long as that particular license is necessary for that establishment and employee position.  Indeed, an employee working at Hollywood Casino Columbus could move to Cleveland and begin working at JACK Cleveland Casino, using the same gaming license the employee already had – all for the employee's, not Hollywood Casino Columbus's or anyone else's, benefit.  Because the gaming license is primarily for the benefit of Plaintiff, the associated fees for the license are a permissible deduction under the FLSA and Ohio law, and Plaintiff has failed to state a claim.

> **3.**    **Under Ohio Law, An Employee Could Not Work And Make A Living At Casinos And Racinos Without A Gaming License – Underscoring That The License Is For The Benefit Of The Employee.**

Plaintiff admits she and those she seeks to represent were "required to maintain gaming licenses pursuant to Ohio law." (Complaint at ¶ 25). Three Ohio agencies – not the employers – mandate the license and set the requirements for licensure.  It simply defies logic to claim the gaming license is an *employer*-required tool of the trade, a deduction for which would be prohibited if it took wages below the minimum level.  *See, e.g.*, *Fact Sheet #16*.  Since, in fact, the license is a *State-issued* requirement, the deduction can legally take an employee's wages below the minimum level because the license is actually for the employee's benefit.  As a result, Plaintiff has failed to state a claim under Rule 12(b)(6).

A casino or racino *could* operate without gaming licenses, but for the State's licensing requirements.  This is entirely different than a hospital on its own requiring its employees to purchase and wear specific uniforms, or an auto shop making its mechanics purchase their own tools – tools necessary for the *fundamental functioning of the business*.  *See* 29 C.F.R. § 531.32 (2018).  In both of those situations, the employer is making a business choice as to what it requires of its employees – no state law is dictating that.  As a result, the employees in both instances do not benefit from having to purchase those items – a nurse having to purchase a uniform unique and specific to the hospital at which she works and unusable elsewhere or a mechanic buying tools necessary to perform work for his auto shop employer simply derive no benefit for themselves by doing so.  *See Fact Sheet #16*.

The gaming license is different because it is a requirement under applicable law, not an employer requirement.  Rather, the state laws require the gaming licenses as a *condition of employment* – without the license, Plaintiff and others would be *unable to work at a casino or racino*.  *See, e.g.*, U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2001 WL 1558768, at *4 (Feb. 16, 2001) (noting an employer need not bear the cost of a pre-employment physical or drug test which must be passed to be employed).  In short, the license is primarily for the benefit of the employee's *future employment* – once licensed, that employee can work at any applicable casino or racino in the state of Ohio.  As such, the deductions are permissible under the FLSA.[10]

---

[10] A different DOL Fact Sheet, discussing licensed security guards, notes the employer cannot deduct specific tools of the security industry required *by the employer* and identifies a uniform, gun, whistle, belt, and other required tools.  The cost of a license is glaringly absent from the list of prohibited deductions. *See Fact Sheet #4: Security Guard/Maintenance Service Industry Under the Fair Labor Standards Act (FLSA)*, U.S. DEP'T OF LABOR: WAGE AND HOUR DIVISION (July 2008), https://www.dol.gov/whd/regs/compliance/whdfs4.pdf.

Moreover, obtaining a gaming license under Ohio law is *not* merely paying a fee.[11] It requires a detailed application, background check, and a determination of suitability for licensure. *See generally* License Application. These requirements are quite similar to other professional licensure requirement activities (such as continuing education or training mandated by a state or agency) that are not "compensable" pursuant to the FLSA because they *benefit the employee*. In *Haszard v. American Medical Response Northwest, Inc.*, paramedics alleged they should have been compensated for time spent in training required by their employer. 237 F. Supp. 2d 1151 (D. Or. 2001). The Court rejected that argument because the training was the minimum required "to work as a paramedic" in Oregon. *Id.* at 1154. In addition, the court found that when an employer required nothing beyond the state minimum, the training was primarily for the benefit of the employee because it enabled the employee "to gain or continue employment with *other Oregon employers of paramedics*." *Id.* at 1162, 1165 (emphasis added) (also finding where the employer *went beyond the state requirements*, that training was *not* primarily for the benefit of the employee because the additional training was not generally *necessary* for employment with other employers).

Here, Defendants do not require (and Plaintiff has not alleged) *anything* beyond the requirements of Ohio law. And just as the time spent completing training required by state law requirements in *Haszard* was not compensable because it benefitted the employee, the gaming license similarly benefits the employee. The license allows for employment at all Ohio gaming employers, such that the deduction is allowable, regardless of whether it cuts into an employee's minimum wage. For this additional reason, Plaintiff's Complaint fails to state a cognizable claim.

---

[11] There are wide variations in the exact mechanics (including terminology, pricing, procedure) of the licensure process for the three regulating entities, underscoring the inappropriateness of a collective or class action under the set of facts presented here with such vast variability at the center of the allegations. Further, Plaintiff's class and collective definitions fail to limit the potential members to those who received a deduction *and* whose resultant pay was less than minimum wage. The current definition including *all* individuals receiving a deduction – regardless of its effect on minimum wage – is **patently overbroad**.

4.     **The Stated Purpose of the License Is to Ensure the Integrity of Gaming and to Protect the Public – Further Showing the License Is Not for the Employer's Benefit.**

The express purpose of the gaming license – as provided by the State regulatory commissions – confirms the license is not for the benefit of the employer.[12] The licenses are part-and-parcel of a regulatory scheme necessary to achieve the *State of Ohio's* goal of maintaining the integrity of the gaming in Ohio and protecting the public. The same is true with a bar license; it is not required for the employer's benefit but, instead, exists to ensure the integrity of the legal profession and protect the public. That same general purpose – protecting the public by ensuring minimum qualifications are met before an individual may engage in a profession – extends to numerous other licenses, including CPA licenses,[13] cosmetology licenses,[14] and massage therapist licenses,[15] among numerous others. A gaming license is no different. If Plaintiff's reasoning were adopted, **all** government-issued licenses needed to work in certain industries would necessarily be for the "benefit of the employer," even though the actual purpose of the license is to protect the

---

[12] *See, e.g.*, O.R.C. § 3772.03(A) ("To ensure the integrity of casino gaming, the commission shall have authority to complete the functions of licensing, regulating, investigating, and penalizing casino operators…key employees, [and] casino gaming employees."); O.R.C. § 3769.03 ("The State-racing commission may issue, deny, suspend, or revoke licenses to those persons engaged in racing and to those employees of permit holders as is in the public interest for the purpose of maintaining a proper control over horse-racing meetings."); OHIO STATE RACING COMMISSION, *About the Ohio State Racing Commission*, www.racingohio.net/About-Us.html (2021) ("The [racing] commission is dedicated to the protection, preservation, and promotion of horse racing and its related industry components. In that connection, the commission shall regulate pari-mutuel wagering and the licensing of all industry participants in order to insure the protection of the wagering public and integrity of the sport.").

[13] The purpose of the licensing board is to "defin[e] the practice of public accounting" and to "establish and maintain a high standard of integrity and dignity in registrants and certificate holders" in providing services to the public. O.R.C. § 4701.03.

[14] Licensure of cosmetologists is to ensure "the ability of a prospective cosmetology professional to maintain a safe and sanitary place of service delivery" to the public. O.R.C. § 4713.24.

[15] Licensure of massage therapists by the Ohio State Medical Board carries out its purpose "to protect and enhance the health and safety of the public through effective medical regulation." State Medical Board of Ohio, *Agency Mission*, https://med.ohio.gov/The-Board/Agency-Mission-and-Goals.

public and the integrity of the game, furthering the State's interests – *not* the interests of any employer.

## VI.    CONCLUSION

For all of the reasons set forth above, this Court should dismiss all of Plaintiff's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

/s/ Kerri L. Keller
Kerri L. Keller (0075075)
BROUSE MCDOWELL
388 S. Main Street, Suite 500
Akron, OH 44311
Telephone: (330) 434-7250
Facsimile: (330) 253-8601
kkeller@brouse.com

/s/ Christopher J. Carney
Christopher J. Carney (0037597)
BROUSE MCDOWELL
600 Superior Ave. E.
Suite 1600
Cleveland, OH 44114
Telephone: (216) 830-6830
Facsimile: (216) 830-6807
ccarney@brouse.com

*Counsel for Defendants*

<u>*PRO HAC VICE FORTHCOMING*</u>

Denise K. Drake
Jason N.W. Plowman
Matthew P.F. Linnabary
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone:    (816) 753-1000
Facsimile:    *(816) 753-1536 Fax*

*Counsel for Defendants*

## CERTIFICATION OF COMPLIANCE

I hereby certify that the memorandum in support of this dispositive motion adheres to the page limitations set forth in LR 7.1(f) and that this case has not yet been assigned to a track.

/s/*Kerri L. Keller*
Kerri L. Keller (0075075)

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2021, a copy of the foregoing *Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/*Kerri L. Keller*
Kerri L. Keller (0075075)